UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JAMES EVERETT SHELTON and GEORGE MOORE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SECURITY SYSTEMS, INC. D/B/A SAFE HOME SECURITY, a Connecticut company, SAFEGUARD SECURITY & SURVEILLANCE INC., a Connecticut company, FIVE DIAMOND SECURITY, LLC, a Florida company, and FRANK ERICKSON,<br><br>*Defendants*. | Case No. 19-cv-61787<br><br>**CLASS ACTION** |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs James Everett Shelton and George Moore bring this class action under the Telephone Consumer Protection Act against Defendants Security Systems, Inc. d/b/a Safe Home Security ("Safe Home Security"), Safeguard Security & Surveillance, Inc. ("Safeguard"), Five Diamond Security, LLC ("Five Diamond") and Frank Erickson (collectively referred to as "Defendants"), to stop Defendants from making unauthorized pre-recorded voice message calls promoting Safe Home Security's home alarm services and to obtain redress for all persons similarly injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1.      This case is brought to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response

1

to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Safeguard Security & Surveillance, Inc. ("Safeguard"), through Mr. Frank Erickson, made repeated, nonconsensual autodialed and prerecorded-voice telemarketing calls to the residential telephone numbers of Plaintiff George Moore and others to promote Safe Home Security services in violation of the TCPA. The calls were also made to some individuals despite their phone number's presence on the National Do Not Call Registry, such as Plaintiff George Moore.

3. Similarly, Mr. Shelton was called with a predictive dialer, an automated and computerized phone system by Five Diamond Security, Inc., or a marketing company working on their behalf, to promote Safe Home Security services.

4. The Plaintiffs and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Safe Home Security. Plaintiffs also seek an injunction requiring Defendants to cease making automated calls to consumers.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

6. Plaintiff Shelton is a Pennsylvania resident.

7. Plaintiff Moore is an Illinois resident.

8. Defendant Five Diamond Security, LLC is a Florida limited liability company with its principal place of business at 631 East Atlantic Blvd., Pompano Beach, FL 33060.

9. Defendant Security Systems, Inc. d/b/a Safe Home Security is a Connecticut corporation with its principal place of business at 1125 Middle St. in Middletown, CT 06416. Security Systems, Inc. installs home alarm systems in this District. In fact, Security Systems, Inc. is registered to do business in this District, with a Registered Agent of InCorp Services, Inc., located at 17888 67th Court North in Loxahatchee, FL 33470.

10. Defendant Safeguard Security & Surveillance, Inc. is a Connecticut corporation with its principal place of business at 1 Corporate Dr. in Windsor Locks, CT 06096 with a registered agent of Mark Theriaque at the same address. Defendant Safeguard places telemarketing calls into this District, and was previously registered to do business in this District.

11. Defendant Frank Erickson is an employee or agent of Safeguard Security & Surveillance, Inc.

## JURISDICTION & VENUE

12. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

13. The Court has personal jurisdiction over Defendants because of their registration with the State of Florida, by the fact that they regularly transact business in Florida, and because of their involvement in an illegal telemarketing scheme involving calls from and into Florida.

14. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District and because Defendant Five Diamond resides in this District.

## TCPA BACKGROUND

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can

be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

19. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The TCPA Prohibits Pre-Recorded Telemarketing Calls

20. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

21. The TCPA contains a private right of action for the making of these calls, and provides that a recipient can sue the violator and seek statutory damages as well as injunctive relief. 47 U.S.C. § 227(b)(3).

The TCPA and the National Do Not Call Registry

22. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

23. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

The Illinois Automatic Telephone Dialers Act

24.     In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party". 815 ILCS 305/15(d).  The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees.  815 ILCS 305/30.

25.     Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

The Growing Problem of Automated Telemarketing

26.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

27.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

28.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

29.   Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

30.   According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

31.   The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

**FACTUAL ALLEGATIONS**

<u>The Call to Mr. Shelton</u>

32.   Plaintiff Shelton is a "person" as defined by 47 U.S.C. § 153(39).

33.   Mr. Shelton's telephone number, (484) 626-XXXX, is registered to a cellular telephone service.

34.   Mr. Shelton was called by Five Diamond, or a party marketing on its behalf, on June 3, 2019.

35.   When Mr. Shelton answered the call, there was a significant pause.

36.   This pause is a telltale sign of a predictive dialer.

37.   The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

38.   As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

39. A predictive dialer is an ATDS as that term is defined by the TCPA.

40. Eventually, a pre-recorded message began to play:

> I wanted to let you know that you do qualify for the system, and I'm going to go ahead and get the home security expert on the line with us now. Would that be okay?

41. The pre-recorded voice was evident from the fact that Mr. Shelton tried to talk to it, but it could not engage in any conversation and its tone was unnaturally consistent throughout the interaction.

42. However, the company was not identified in the pre-recorded message, so Mr. Shelton investigated the call and confirmed that it was a recorded voice calling him.

43. When the call connected with a live individual, Plaintiff Shelton spoke with "Maurice," who received an offer for home security and was going to be transferred to Five Diamond's "validation officer" when the call disconnected.

44. Less than a minute after the call disconnected, Plaintiff Shelton received a call from "Ignasia" at Five Diamond, who confirmed that the Plaintiffs had spoken with "Maurice."

45. Eventually, Plaintiff Shelton received an e-mail from Five Diamond confirming that they were promoting Safeguard's services.

46. The e-mail, entitled "Home Security Info," stated:

> Hey James,
>
> I just wanted to send you the information that you requested. There are two links below. One is for the alarm which would include 3 Doors, 1 Moon Detector, and 1 KeyFob. You can add additional features to your alarm such as smoke detectors, carbon monoxide detectors, or indoor/outdoor cameras if you're interested. The second link is for Rapid Response, the company that handles all of the monitoring for your system in case of any emergencies. The only thing that you would be responsible for at the me of installation is your first monthly payment of $44.99 by check or credit/debit card. If you have any questions or concerns please let me know. Thank you!
>
> https://safeguardssinc.com/

>https://www.rrms.com/
>
>Tom Brighton
>Five Diamond Home Security
>Phone (954) 803-3806
>Fax (800) 481-4129
>tom@fivediamondsecurity.com

47. Safeguard is an Authorized Dealer for Safe Home Security's services.

Calls to Mr. Moore

48. Plaintiff George Moore's telephone number in question, (630) XXX-1188 is a residential landline.

49. The number has been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

50. On February 22, 2019, March 5, 2019, and June 5, 2019, Plaintiff George Moore received prerecorded telemarketing calls from the Defendants.

51. Each time the Plaintiff answered, he heard the same words spoken by the same female voice in an unnaturally identical mode distinctive of a prerecorded message.

52. The pre-recorded message promoted the availability of home security system upgrades.

53. Mr. Moore attempted to ignore the calls.

54. However, Mr. Moore received another pre-recorded call on June 13, 2019.

55. When the Plaintiff answered, he heard the identical prerecorded voice as the other calls.

56. The pre-recorded message promoted home security goods and services, just like the other calls.

57. Mr. Moore responded to the prerecorded message.

58. Mr. Moore was eventually connected with Frank Erickson, who stated his company was "Safeguard Surveillance & Security".

59. Mr. Erickson also said that his company was located at 1 Corporate Drive in Windsor Locks, CT.

60. To verify the source of the calls, Plaintiff George Moore set an appointment with the caller.

61. An individual came to Plaintiff Moore's house with a contract for Security Systems, Inc. That contract is attached as Exhibit 1.

62. Plaintiff George Moore and the other class members have not provided Defendants with their prior express written consent to place telemarketing calls to their phone numbers.

63. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed the solitude of Plaintiffs and the class.

**SAFE HOME SECURITY'S LIABILITY FOR THE CO-DEFENDANTS' CONDUCT**

64. Safe Home provides commercial and residential home alarm services.

65. Safe Home uses telemarketing to promote its services.

66. Safe Home's contact with the general public is limited and it instead relies on a series of vendors and call centers such as the co-defendants to offer its goods and services using predictive dialers and prerecorded-voice calls.

67. The Defendants use this equipment because it allows for thousands of automated calls to be placed at one time, but their telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone for autodialed calls or who respond to the prerecorded-voice call. Through this method, the Defendants shift the burden of wasted time to the consumer they call with unsolicited messages.

68. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

69. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

70. In fact, the Federal Communication Commission has instructed that sellers such as Safe Home Security may not avoid liability by outsourcing telemarketing to third parties, such as the co-defendants:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

71. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

72. Safe Home is liable for the co-defendants' telemarketing calls, as it explicitly hired them to bring in new customers and knows it does so through telemarketing.

73. In fact, through being able to complete a sale for Safe Home, the co-defendants can bind Safe Home in contract, a hallmark of agency.

74. Safe Home knew (or reasonably should have known) that the co-defendants were violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

75. In fact, Safe Home had previously received complaints for Safeguard's illegal telemarketing practices.

76. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

77. Safe Home Security maintained interim control over the co-defendants' actions with respect to the calling conduct.

78. Safe Home Security had control over whether and under what circumstances it would accept a customer generated through the co-defendants' efforts.

79. Safe Home Security had the ability to prohibit the co-defendants from using an ATDS or pre-recorded message to contact potential customers, and to require certain measures that would effectively prevent the co-defendants from making illegal calls.

80. In fact, Safe Home Security was sued by the Federal Trade Commission in 2015 for its failure to monitor the activities of its vendors, like the co-defendants.

81. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on

behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

82. Accordingly, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Classes:

### AUTOMATED CALL TCPA CLASS

All persons within the United States to whom, on or after four years prior to the filing of the initial complaint in this action: (1) received a call using dialing equipment that was the same or similar used to the dialing equipment used to call Plaintiff Shelton, (2) regarding Safe Home Security services, and for whom (3) Defendants do not claim to have obtained prior express written consent, or claim to have obtained prior express written consent in the same manner they claim to have obtained prior express written consent from Plaintiff Shelton.

### DO NOT CALL LIST CLASS

All persons within the United States to whom, on or after four years prior to the filing of the initial complaint in this action: (a) Safe Home or a third party acting on its behalf made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number (c) that had been listed on the National Do Not Call Registry for at least 30 days prior to the first call.

### PRE-RECORDED TCPA CLASS

All persons within the United States to whom, on or after four years prior to the filing of the initial complaint in this action: (a) Safe Home or a third party acting on its behalf made one or more telephone solicitation calls; (b) to a residential telephone number; (c) using a prerecorded voice.

### IL ATDA SUBCLASS

All Illinois residents to whom, on or after four years prior to the filing of the initial complaint in this action: (a) Safe Home or a third party acting on its behalf made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a prerecorded voice.

83. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery.

84. **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants made unsolicited automated calls to thousands of individuals who fall into the Class definition. Class membership can be easily determined from Defendants' records.

85. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs are members of the Class, and if Defendants violated the TCPA with respect to Plaintiffs, then they violated the TCPA with respect to the other members of the Class. Plaintiffs and the Class sustained the same damages as a result of Defendants' uniform wrongful conduct.

86. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) How Defendants gathered, compiled, or obtained the telephone numbers of Plaintiffs and the Classes;

    b) Whether the calls were made for the purpose of marketing Defendants' products and/or services;

    c) Whether the calls were made using an ATDS and/or pre-recorded or

        artificial voice message;

    d)    Whether Defendants made some or all of the calls without the prior express written consent of Plaintiffs and the Classes;

    e)    Whether Defendants' conduct was willful and knowing such that Plaintiffs and the Classes are entitled to treble damages.

87.  **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

88.  **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class. Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendants' conduct with respect to the Class, not on facts or law applicable only to Plaintiffs.

89.  **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case.

By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Violation of the TCPA's Restrictions on Calling Cellular Telephones**
**(On Behalf of Plaintiff Shelton and the Automated Call TCPA Class)**

90. Plaintiff Shelton repeats and realleges the allegations of paragraphs 1 through 89 of this complaint and incorporates them by reference.

91. Defendants and/or their agents made unsolicited calls to Plaintiff Shelton and the other members of the Automated Call TCPA Class using an ATDS contacting them on their cellular telephone.

92. Defendants made these autodialed calls *en masse* without the consent of Plaintiff and the other members of the class to their cellular telephones.

93. Defendants' conduct was negligent, or willful or knowing.

94. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendants' conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

95. Plaintiff and members of the putative Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On Behalf of Plaintiff George Moore and the Do Not Call List Class)**

96. Plaintiff George Moore repeats and realleges the allegations of paragraphs 1 through 89 of this complaint and incorporates them by reference.

97. Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating

multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

98. The Defendants' violations were negligent and/or willful or knowing.

99. Plaintiff George Moore and DNC List Class Members are entitled to an award of up to $500 in statutory damages per violation (or up to $1,500 in damages where the Court finds such violation to have been willfully or knowingly committed), pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On Behalf of Plaintiff George Moore and the Pre-Recorded TCPA Class)

100. Plaintiff George Moore repeats and realleges the allegations of paragraphs 1 through 89 of this complaint and incorporates them by reference.

101. The Defendants violated the TCPA by (a) initiating telephone solicitations to Plaintiff George Moore's and other class members' residential telephone lines using a prerecorded message, or (b) by the fact that others made those calls on their behalf.

102. The Defendants' violations were negligent and/or willful or knowing. As such, Plaintiff George Moore and associated class members are entitled to an award of up to $500 in statutory damages per violation (or up to $1,500 in damages where the Court finds such violation to have been willfully or knowingly committed),

### FOURTH CAUSE OF ACTION
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*
### (on behalf of Plaintiff George Moore and the IL ATDA Subclass)

103. Plaintiff George Moore repeats and realleges the allegations of paragraphs 1 through 89 of this complaint and incorporates them by reference.

104. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

105. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone

dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

106. The Defendants did not have the consent of Plaintiff George Moore or the other members of the IL ATDA Subclass to play a prerecorded message placed by an autodialer.

107. Nonetheless, the Defendants called the phones of Plaintiff George Moore and the other members of the IL ATDA Subclass using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff George Moore's or the other IL ATDA Subclass members' phone numbers to connect their telephones with a recorded message.

108. Consequently, Defendants violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff George Moore and the other IL ATDA Subclass members, without such persons' consent.

109. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff George Moore and the other members of the IL ATDA Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

**Relief Sought**

WHEREFORE, for themselves and all class members, Plaintiffs request the following relief:

A.  Because of Defendants' violations of the TCPA, Plaintiffs seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such

regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3); (c)(5).

B.  Plaintiffs and members of the Classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making unsolicited autodialed and/or prerecorded marketing calls in the future.

C.  An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Classes, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes.

D.  Such other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs request a jury trial.

Dated:  September 10, 2019.

> /s/ Avi Kaufman
> Avi R. Kaufman (FL Bar no. 84382)
> kaufman@kaufmanpa.com
> Rachel E. Kaufman (FL Bar no. 87406)
> rachel@kaufmanpa.com
> KAUFMAN P.A.
> 400 NW 26th Street
> Miami, FL 33127
> Telephone: (305) 469-5881
>
> *Counsel for Plaintiffs James Everett Shelton and George Moore and all others similarly situated*